# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **LAMONTE DeFRIECE,** ) | |
| ) | Case No. 7:19CV00036 |
| Petitioner, ) | |
| ) | |
| v. ) | **OPINION** |
| ) | |
| **HAROLD W. CLARKE,** ) | By: James P. Jones |
| ) | United States District Judge |
| Respondent. ) | |

Lamonte DeFriece, a Virginia inmate proceeding pro se, brings this Petition for habeas corpus pursuant to 28 U.S.C. § 2254, challenging his 2016 Augusta County Circuit Court conviction and sentence for unlawful wounding. The respondent has filed a Motion to Dismiss. Upon review of the record and pleadings, I find that the Petition is untimely, and that equitable tolling does not apply to save the untimely filing. Accordingly, I grant the respondent's motion.

I.

On January 25, 2016, DeFriece was indicted for malicious wounding of his cell mate, Jung Jun. DeFriece maintained that his actions were in self-defense. After several rounds of negotiation with the prosecution, he entered a guilty plea to the lesser included offense of unlawful wounding on July 19, 2016. The parties stipulated that the prosecution's evidence would be:

> [O]n November 9th, 2015, at Augusta Correction Center, an altercation occurred between the defendant and his cell mate, Mr. Jun. The correctional officer who witnessed the altercation once it became physical . . . would have come and testified in Court that he observed the defendant physically attacking Mr. Jun. The Commonwealth would have presented evidence that Mr. Jun received medical treatment for head injuries which included a skull fracture that were sustained as a result of the defendant's actions.

Plea Tr. 10, July 19, 2016. Counsel for DeFriece then proffered the defense evidence, if the case were to go to trial:

> Mr. DeFriece was inside Cell Twenty-two and Mr. Jun was his cell mate and they had had previous problems. . . . Mr. Jun was coming back to the cell. Mr. DeFriece was locked in his cell and there is a little opening where you can reach out. His arms were out. Mr. Jun came into the area where his cell was and hit him with a trashcan twice. Mr. DeFriece reached through the cell and hit him. The—this was witnessed by an inmate that I interviewed. I forget his name here, James Lee, Jr., 1379638. He witnessed this. He . . . would testify [Correction Officer Hassan] should have seen what was going on and should have heard the trashcan because it was very loud but Correction Officer Hassan opened the door and let the two of them meet. He said that before the door opened, my client will testify that the victim in the case was laughing and taunting him as being the aggressor. Once they got in and my client was afraid because Mr. Jun was a former MP in the South Korean Army and had known Black Belt, various other — karate and other things they do over there and he was afraid and he ended up putting him in a headlock and he denied banging his head on the bars. My client and the witness testified that he actually had him in a choke hold and when he let him go, he had dropped to the floor and that's when he hit his head on whatever his head hit from being dropped. Mr. DeFriece . . . felt that the victim in this case was the

2

>     aggressor but we believe that Trier of Fact would have most likely found that he took it a little too far and we felt that we would have had a good opportunity of getting the malice element—the jury find that there was no malice and we felt there was a good chance based upon Mr. Jun's injury that Mr. DeFriece responded with more force than necessary. That was our—fear and the evidence bears that out and the jury likely would have convicted of unlawful wounding based upon what our—believed the evidence was based on the Commonwealth. . . . But we wanted to put on our general defense on the record.

*Id.* at 11–13.

After DeFriece answered questions about the voluntariness of his plea and satisfaction with counsel, in writing and again orally on the record, the trial court accepted his plea to unlawful wounding and set the sentencing hearing for October 20, 2016. The presentence report calculated DeFriece's sentencing guidelines at one year, ten months, to five years, three months (although the statutory maximum penalty was five years). DeFriece was in custody at the time of the offense for his only prior felony conviction, second degree murder, for which he had been sentenced to twenty years of active incarceration. Prior to the incident with Jun, DeFriece had had a clean prison disciplinary record for five years. The court sentenced DeFriece to four years in prison, followed by six months supervised release. DeFriece did not appeal his conviction or sentence.

On July 6, 2018, DeFriece filed a timely habeas petition in the Supreme Court of Virginia, raising three claims: (1) Counsel failed to perform an adequate pre-trial

investigation and failed to obtain security camera footage and the victim's medical records by subpoena; (2) Counsel failed to submit the state's allegation to any meaningful adversarial testing, thereby depriving DeFriece of a fair trial; and (3) Counsel's ineffectiveness undermined petitioner's ability to make an informed, intelligent, or voluntary decision about his available options, rendering his guilty plea involuntary, because counsel told him that the video surveillance tape was unobtainable and petitioner's only viable option was to plead guilty to the reduced charge.

The Supreme Court of Virginia dismissed DeFriece's state habeas claim on November 30, 2018, finding neither deficient performance nor prejudice. As to the second claim, the court also held that DeFriece was bound by his representation to the court on July 19, 2016, that counsel's performance was adequate. DeFriece signed and dated his § 2254 petition on January 7, 2019,[1] arguing the same legal claims. In claim 1, however, he has added factual allegations that were not presented to the state habeas court, namely that counsel never spoke with Justin Pratt, a defense witness that DeFriece wanted to have testify; DeFriece has alleged that counsel told him Pratt's testimony would not be helpful, and DeFriece attached an Affidavit from Pratt to his pleadings, describing Pratt's observations during the altercation.

---

[1] The respondent notes that the postmark on the envelope was January 11, 2019, and suggests that January 11 is when DeFriece placed his Petition in the mail. For purposes of the timeliness analysis herein, I reach the same result regardless of which date is used.

II.

Under 28 U.S.C. § 2244(d)(1), a petitioner has one year in which to file a federal habeas corpus petition. This statute of limitations runs from the latest of:

>   (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
>   (B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>   (C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>   (D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). DeFriece acknowledges that his Petition was submitted more than one year from the date of final judgment. He argues, however, that his timely state petition restarted the statute of limitations under § 2244(d)(2) or that learning of his attorney's failure to speak with Justin Pratt was a new factual predicate for his claim of inadequate investigation, thus restarting the statute of limitations under § 2244(d)(1)(D). Both arguments rest on misunderstandings of the applicable law.

Section 2244(d)(2) tolls the statute of limitations during the time in which "a properly filed application for State post-conviction or other collateral review . . . is pending." Unlike § 2244(d)(1)(A), § 2244(d)(2) does not delay when the one-year period starts running. Rather, the period starts running when the state judgment becomes final, but the clock is stopped when a state habeas proceeding is properly filed. *Harris v. Hutchinson*, 209 F.3d 325, 327 (4th Cir. 2000). When the state action is no longer pending, the clock resumes at the point where it was when it stopped; the filing period does not begin anew. *McHoney v. South Carolina*, 518 F. Supp. 2d 700, 703–04 (D.S.C. 2007). Likewise, if the statute has already fully run before the state action is filed, the state collateral proceeding can no longer toll the federal filing period, as there is nothing left to toll; the state action does not revive the one-year limitation period. *Wahl v. Kholi*, 562 U.S. 545, 547 (2011).

In the present case, DeFriece's sentencing order was entered October 20, 2016. Because he did not appeal his conviction or sentence, and the time within which to do so expired thirty days later, Va. Sup. Ct. R. 5A:6, the judgment became final on November 21, 2016.[2] The one-year statute of limitations also began to run

---

[2] In his response to respondent's Motion to Dismiss, DeFriece argues that his judgment did not become final for ninety days, relying on *Clay v. United States*, 537 U.S. 522 (2003). *Clay* involved calculating when an appeals court judgment became final after the defendant chose not to file a petition for certiorari in the Supreme Court. The time for filing such a petition to the Court is ninety days. DeFriece, however, never appealed to the state appellate court, where the time limit was thirty days; therefore, his judgment became final after thirty days. Either way, the one-year limitation in § 2244(d)(1)(A) expired before DeFriece filed his state habeas petition.

on November 21, 2016, and expired on November 21, 2017, more than six months before DeFriece filed his state habeas petition on July 6, 2018. His federal petition was already time-barred by the time he filed the state petition, and thus, the state petition was unable to toll or interrupt the running of the statute.

DeFriece fares no better with his § 2244(d)(1)(D) claim. This section provides a petitioner with a later accrual date for his statute of limitations only if vital facts could not have been known earlier. The vital facts constitute the factual predicate of a petitioner's delayed claim. The facts which make up the claim are different from additional evidence which supports the claim. *McAleese v. Brennan*, 483 F.3d 206, 214 (3d Cir. 2007). DeFriece knew when he entered his guilty plea that his attorney had no video footage from the prison cameras and he knew that Justin Pratt was not present to testify, and that his attorney did not subpoena Pratt because Pratt was not helpful to the defense case. DeFriece allegedly knew what Pratt saw and the facts to which he would have testified if present. He could have filed his § 2254 petition in a timely fashion, as he did in state court, without waiting for an affidavit from Pratt.[3] In short, there is nothing new about the facts alleged that would trigger calculating the one-year filing period under § 2244(d)(1)(D).

---

[3] To the extent DeFriece argues that his attorney's failure to speak to Pratt constitutes a new fact, DeFriece failed to present this evidence to the state habeas court. Accordingly, the state court has been deprived of the opportunity to address the claim in the first instance. Because it can no longer be raised in the state habeas proceeding, the issue is simultaneously exhausted and defaulted. *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991).

The statute of limitations for habeas petitions is subject to equitable tolling and can be overridden to prevent a miscarriage of justice upon a substantial claim of actual innocence. Equitable tolling applies if the petitioner has pursued his rights diligently and some extraordinary circumstances prevented his timely filing. *Holland v. Florida*, 560 U.S. 631, 636, 649 (2010). DeFriece has not pursued his rights diligently. The federal statute of limitations had expired months before he filed his state habeas. He has given no reason for his ability to file the state habeas claim in July, but not to do so in his federal case. He could have timely filed a protective petition in federal court and asked the court to stay and abey the federal proceedings until the state petition was resolved. *See Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005). The facts he has argued here, that that there were witnesses and other evidence to show that he acted in self-defense, were fully known to him when he entered his guilty plea. No extraordinary circumstances prevented him from filing a timely petition.

To the extent DeFriece now argues for tolling because his attorney misled him in some way, the record does not support such an allegation. Counsel told DeFriece that Pratt could not help his case; the state prosecutor already had a statement from Justin Pratt, apparently one in which Pratt told DeFriece "You got to stop or you're going to kill him." Sentencing Tr. 13, October 20, 2016. Reviewing that information in discovery may well have led counsel to advise against calling Pratt, no matter

what else he might say, because the statement in the State's possession would have been highly prejudicial to DeFriece's case when brought out on cross-examination. Likewise, counsel's failure to subpoena the video footage proves very little; the lack of video footage, due to camera malfunction or other reason, was known to DeFriece not just from his attorney, but from other inmates in the prison who had been unable to get a recording that could have helped them. If counsel received reliable information from the prosecuting attorney or from the prison that no video existed, then counsel had no obligation to subpoena non-existent footage. The delay in learning that his attorney never spoke to Pratt personally was only minimally relevant and did not constitute an extraordinary circumstance to justify late filing of DeFriece's § 2254 petition.

Finally, DeFriece's allegations are not sufficient to show actual innocence sufficient to overcome the one-year statute of limitations. In balancing the "societal interests in finality, comity, and conservation of scarce judicial resources with the individual interest in justice that arises in the extraordinary case," the Court has recognized a "miscarriage of justice exception" to the statute of limitations when a litigant presents new evidence showing that, absent constitutional error, "no reasonable juror would have convicted" the defendant. *McQuiggin v. Perkins*, 569 U.S. 383, 390, 393–95 (2013) (internal quotation marks and citation omitted). The standard for proving actual innocence is more likely than not, in other words, it is

probable that no reasonable juror would have convicted the defendant, but for the constitutional errors alleged. *Schlup v. Delo,* 513 U.S. 298, 327 (1995). A credible claim of actual innocence must be supported by new reliable evidence, such as exculpatory scientific evidence, critical physical evidence, or trustworthy eyewitness accounts. *Id*. at 324. DeFriece has not offered such *new* evidence. Pratt's Affidavit describes development of the altercation in the same way it was described by DeFriece's counsel at the plea hearing, to which both DeFriece and witness James Lee would have testified, if called.

Nor does the Affidavit establish the probability that no reasonable juror would convict DeFriece. Pratt states that DeFriece wrapped his arm around Jun's neck and lifted him off the floor, holding him in that position until Jun stopped trying to strike DeFriece. Pratt states further, "At that point I told DeFriece to, 'Let him go, let him go,' and, 'Mr. DeFriece, let him go.'" Pet. Ex. 1, Pratt Aff., ECF No. 1. Coupled with the earlier statement in the prosecution's possession, "You got to stop or you're going to kill him" (Sentencing Tr. 13), Pratt's testimony would tend to show that DeFriece got carried away and used more force than necessary to defend himself, just as his lawyer warned him. To claim self-defense successfully, the "amount of force used must be reasonable in relation to the harm threatened." *Peeples v. Commonwealth*, 519 S.E.2d 382, 386 (Va. Ct. App. 1999) (internal quotation marks and citation omitted). Whether the force used was reasonable is a question of fact

10

for the jury. *Foster v. Commonwealth*, 412 S.E.2d 198, 201 (Va. Ct. App. 1991). When combined with the severity of Jun's injuries, the eyewitness testimony does not establish that no reasonable juror would have convicted DeFriece. *McQuiggin*, 569 U.S. at 399. Accordingly, his claim of miscarriage of justice does not override the statute of limitations.

III.

For the reasons stated, I will grant the Motion to Dismiss.

A separate Final Order will be entered herewith.

    DATED: February 6, 2020

    /s/ JAMES P. JONES
    United States District Judge